IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FRANCISCO MEJIA OLALDE, | ) ) ) |
| *Petitioner*, | ) ) |
| v. | ) ) ) No. 1:25-cv-00168-JMD |
| KRISTI NOEM, Secretary of the United States Department of Homeland Security, et al. | ) ) ) ) ) |
| *Respondents*. | ) ) |

**MEMORANDUM AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

Francisco Mejia Olalde, a citizen of Mexico, has lived in the United States for almost 40 years, but he was never lawfully "admitted" into the country. Now, he is detained, awaiting immigration proceedings. Mejia Olalde petitions for a writ of habeas corpus, asking either that the Court order him released or order that he receive an individualized bond hearing. The parties disagree over which statute governs Mejia Olalde's detention, 8 U.S.C. § 1225(b)(2) or § 1226(a). If § 1225(b)(2) governs, then the Federal Government must detain him without bond. But if § 1226(a) governs, then an individualized bond hearing may be permitted. District courts are divided over the application of these statutes when individuals have been living within the country for many years. *See, e.g.*, *Vargas Lopez v. Trump*, 8:25CV526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (holding that § 1225(b)(2) applies); *Maldonado v. Olson*, 25-cv-3142, 2025 WL 2374411, at *11 (D. Minn. Aug. 15, 2025) (holding that § 1226(a) applies).

The Court concludes that the Federal Government has the better of the argument. The plain text provides that Mejia Olalde is an applicant for admission to the United States, so he is governed by § 1225(b)(2) and is ineligible to receive a bond hearing. Mejia Olalde

1

says that the "overwhelming" majority of district courts have agreed with his position. ECF 25 at 6. But even if so, the overwhelming majority of district courts sometimes get the law very wrong. *See, e.g.*, *Trump v. CASA, Inc.*, 606 U.S. 831, 840 (2025) (declaring universal injunctions beyond the equitable authority of federal district courts despite widespread use of that injunction). And some of the court decisions Mejia Olalde cites appear to defer substantially to each other. What governs this case is the text of the statute, not what other district courts have concluded. Because § 1225(b)(2) plainly covers Mejia Olalde and requires detention without bond, the Court denies the petition for a writ of habeas corpus. ECF 1.

## Factual Background

Mejia Olalde requested expedited consideration by November 10, when he will appear for a merits hearing before the Kansas City Immigration Court. The facts are not in dispute. Mejia Olalde is neither a citizen nor a national of the United States. Mejia Olalde is a citizen of Mexico. He entered the United States without inspection in 1988 and has been in the United States ever since. Immigration and Customs Enforcement detained Mejia Olalde on September 22, 2025, and Mejia Olalde has been in custody since that date. Mejia Olalde requested an individualized bond hearing, but an immigration judge declined to entertain that request. This petition for a writ of habeas corpus was filed initially in the Northern District of Illinois. At the time the petition was filed, however, Mejia Olalde was detained in the Eastern District of Missouri. But jurisdiction for core habeas petitions "'lies in only . . . the district of confinement,'" *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (per curiam) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)), so the judge transferred this case to the Eastern District of Missouri. *Mejia Olalde v. Noem*, 25 C 11481, 2025 WL 2841999, at *3 (N.D. Ill. Oct. 7, 2025). The parties do not dispute the Court's jurisdiction here.

**Statutory Background**

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Mejia Olalde asks the Court to either order his release or, alternatively, order that he be granted an individualized bond hearing under the framework of 8 U.S.C. § 1226(a). ECF 1 at 5; ECF 25 at 14.

The dispositive question is whether § 1225(b)(2) or § 1226(a) governs Mejia Olalde's detention. Although the latter section generally permits bond, the former does not; it requires that an individual "shall be detained." The Court agrees with those courts who have held that § 1225(b)(2) applies, so Mejia Olalde is *not* entitled to a bond hearing.

The parties agree that two provisions do not apply here. The first provides expedited removal "without further hearing" for an "arriving" alien whom an immigration officer determines is inadmissible. 8 U.S.C. § 1225(b)(1)(A)(i). Second, § 1225(b)(1)(A)(iii) provides for removal without further hearing for an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior." The respondents agree that neither provision applies to Mejia Olalde, who has been continuously present in the United States for almost 40 years.

Two other provisions are relevant, and the parties dispute which one applies. The Federal Government argues that § 1225(b)(2) covers Mejia Olalde. That provision requires that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." § 1225(b)(2)(A) (emphasis added). "Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded."

3

*Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  The Board of Immigration Appeals recently interpreted § 1225(b)(2) to prohibit an immigration judge from holding a bond hearing for an alien who had been in the United States for longer than two years.  *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 228 (BIA 2025).

By contrast, Mejia Olalde argues that § 1226(a) applies.  It provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  Section 1226(a)(2)(A) further says that the Attorney General "may" release the alien on bond.  *Jennings*, 583 U.S. at 303 ("Section 1226(a) also permits the Attorney General to release those aliens on bond . . . .").  Section 1226(c)(1) includes several exceptions, restricting the Attorney General from releasing aliens who committed or are charged with certain offenses.  The parties agree that none of the exceptions in § 1226(c) applies here.

## Analysis

The Court concludes that § 1225—not § 1226—applies, so Mejia Olalde is *not* entitled to a bond hearing or release.  When interpreting a statute, the Court begins "with the statute's plain language, giving words the meaning that proper grammar and usage would assign them."  *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024) (internal quotation marks omitted).  The question here is whether Mejia Olalde is an "applicant for admission."  He is.  That question is dispositive because an "an applicant for admission . . . shall be detained" unless an immigration officer determines that the alien is "clearly and beyond a doubt entitled to be admitted"—which did not happen in this case.  § 1225(b)(2)(A).

Mejia Olalde is an "applicant for admission."  Under § 1225(a)(1), "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission."  Mejia Olalde is an "alien."

4

He is "present in the United States." He "has not been admitted," *id.* § 1225(a)(1), because he did not "lawful[ly] ent[er] the country after inspection and authorization by an immigration officer," § 1101(a)(13)(A); *see also Jennings*, 583 U.S. at 287 ("Under [] 8 U.S.C. § 1225, an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'"). Because Mejia Olalde is "an applicant for admission," § 1225(b)(2)(A) applies. He is not eligible for a bond hearing.

Arguing otherwise, Mejia Olalde emphasizes that § 1225(b)(2)(A) applies to a person who is "seeking admission." True, some district courts have read "seeking admission" to imply some "action" beyond continuous presence in the country when an individual has been in the country for several years, concluding "those who have been present in the country for years are not actively 'seeking admission.'" *See, e.g.*, *Ochoa Ochoa v. Noem*, 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025). Mejia Olalde argues that "an immigrant submits an application for admission at a distinct point in time and stretching the phrase . . . to refer to a period of years would push the statutory text beyond its breaking point." *United States v. Gambino-Ruiz*, 91 F.4th 981, 989 (9th Cir. 2024) (internal quotation marks omitted) (describing 8 U.S.C. § 1182(a)(7)). Mejia Olalde argues that "seeking admission" must occur in the context of an "examin[ation]" by an "immigration officer." § 1225(b)(2)(A). Mejia Olalde thus contends that § 1225(b)(2) applies only to recently arrived noncitizens seeking entry at a border or point of entry, where they are examined by an immigration officer. ECF 25 at 11.

But Mejia Olalde's argument fails for several reasons. First, the statute *defines* Mejia Olalde as seeking admission. "An alien present in the United States who has not been admitted or who arrives in the United States . . . *shall be deemed* for purposes of this chapter *an applicant for admission*." § 1225(a)(1) (emphasis added). The statute explicitly includes

5

more than just arriving aliens in the definition of "applicant[s] for admission." Because Mejia Olalde is an alien, present in the United States, who has not been admitted, the law defines him to be an applicant for admission. He is thus seeking admission.

Second, it makes no sense to describe an active applicant for admission as somebody who is not "seeking" admission. To "seek" is a synonym of to "apply" for. *Apply (for)*, Merriam-Webster (last visited Nov. 6, 2025);[1] *see also* William N. Eskridge, Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 111 (2016) (reasoning that "meaningful variation of terminology within a statute ought not be as powerful a consideration as ordinary meaning" and concluding that "the Legislature is not required to be overly repetitive in its choice of language") (internal citation omitted). The Supreme Court describes § 1225(b)(2) as a "broader," "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. Mejia Olalde's hair-splitting parsing of the statute's text contradicts the ordinary meaning and undermines the role of § 1225(b)(2) as a catchall.

Third, other provisions in the statute buttress the conclusion that Mejia Olalde is seeking admission. "[A] fundamental canon of statutory construction" is "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 664, 666 (2007) (internal quotation marks omitted). Mejia Olalde points to the broader context of § 1225, including its caption: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Mejia Olalde emphasizes that the caption references *arriving* aliens. But even accepting that the caption of a statute is relevant for interpreting its meaning, *see Yates v. United States*, 574 U.S. 528, 539–40 (2015), the caption cuts against

---

[1] https://www.merriam-webster.com/thesaurus/apply%20for

6

Mejia Olalde's reading.  The three subjects referenced in it are separated by semi-colons, and § 1225(b)(2) addresses the third subject ("referral for hearing"), not the second subject ("expedited removal").  Another provision of § 1225 requires inspection of "[a]ll aliens . . . who are applicants for admission or *otherwise* seeking admission."  § 1225(a)(3) (emphasis added).  This text reinforces the reading that all "applicants for admission" are "seeking admission" because it recognizes that there are "other[ ]" ways to seek admission besides being an "applicant[] for admission."  *Otherwise*, Merriam-Webster (last visited Nov. 6, 2025) (defining "otherwise" as 1. "in a different way or manner," 2 "in different circumstances," and 3. "in other respects").[2]  Also, the Immigration and Nationality Act does not define "admission" merely as "entry."  Rather "admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  § 1101(a)(13)(A).  An alien can have physically entered the country many years before and still be an applicant for *lawful* entry, seeking legal "admission."  *See Matter of Lemus*, 25 I&N Dec. 734, 743 n.6 (BIA 2012).  The context around § 1225(b)(2) favors reading the provision to cover aliens like Mejia Olalde.

Further, the rest of § 1225 establishes that Congress knows how to limit the scope of the text geographically and temporally when it wants to.  For example, § 1225(b)(1)(A)(i) applies to an alien "who is arriving in the United States."  Here, in contrast, § 1225(b)(2) has no similar language limiting applicability only to aliens who are in the process of "arriving."  Likewise, § 1225(b)(1)(A)(iii) applies to an alien who cannot show he has been physically in the United States "continuously for the 2-year period immediately prior."  Yet the very next paragraph (§ 1225(b)(2), the provision applicable here) includes no time limit.  If Congress meant to say that an alien no longer is "seeking admission" after some amount of time in the

---

[2] https://www.merriam-webster.com/dictionary/otherwise

United States, Congress knew how to do so. Mejia Olalde asks the Court to insert "some arbitrary time limit devised by courts" that is not in the text of the statute. *Jennings*, 583 U.S. at 304. The Court cannot do so.

Mejia Olalde also cites the legislative history of § 1225. But "the problems with legislative history are well rehearsed." *Wooden v. United States*, 595 U.S. 360, 381 (2022) (Barrett, J., joined by Thomas, J., concurring). "In the interpretation of legislation, we aspire to be 'a nation of laws, not of men.' This means (1) giving effect to the text that lawmakers have adopted and that the people are entitled to rely on, and (2) giving *no* effect to lawmakers' unenacted desires." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 29 (2012).

Next, Mejia Olalde argues that interpreting § 1225(b)(2) to apply to him would render superfluous a recent amendment to § 1226. The Laken Riley Act added another exception to the Attorney General's power to allow bond under § 1226. Specifically, the Act restricts the Attorney General from releasing "any alien" who is "inadmissible" under certain provisions *and* "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of" certain crimes. § 1226(c)(1)(E). If § 1225(b)(2) is interpreted to require detention of all aliens within the United States who have not been admitted, then Mejia Olalde argues that the requirement on the Attorney General to take into custody certain inadmissible aliens is superfluous. That argument fails for several reasons.

First, the Government points out that the Laken Riley Act may apply to situations where § 1225 might not. For example, an individual who has been admitted through fraud might not be an "applicant for admission" under § 1225. *See* § 1182(a)(6)(C)(i) ("Any alien who, by fraud . . . has procured . . . a visa, other documentation, or *admission* into the United

8

States . . . is inadmissible.") (emphasis added).  But the Laken Riley Act may require that person to be detained even if § 1225 would not apply.

Second, even assuming there were surplusage, that cannot trump the plain meaning of § 1225(b)(2).  "As the Supreme Court has explained, when confronted with a choice between an interpretation that honors a statute's plain meaning but produces surplusage, and an interpretation that ignores the plain meaning but avoids surplusage, there is no choice at all—the plain meaning must control."  *Artola v. Garland*, 996 F.3d 840, 844 (8th Cir. 2021).

Third, it is perfectly possible to interpret the provisions as merely overlapping, and Congress often takes a "belt and suspenders approach" to legislation.  *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020).  Section 1226(c) regulates not only *what* the Attorney General must do (take aliens into custody), but also *when* the Attorney General must do so. § 1226(c)(1) (requiring the Attorney General to "take into custody" the alien "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense"); *see also* § 1226(c)(3) (requiring that the Secretary of Homeland Security "shall issue" a "detainer" for an alien and "if the alien is not otherwise detained by Federal, State, or local officials, shall effectively and expeditiously take custody of the alien").  By contrast, § 1225 does not specify a timeline for when an alien is to be taken into custody. § 1225(b)(2)(A) (providing only, in the passive voice, that the alien "shall be detained").  The Court's interpretation of § 1225 thus does not render the Laken Riley Act superfluous.  *See Jennings*, 583 U.S. at 305 (explaining that a provision of the Patriot Act was not superfluous to § 1226(c) because, although "the two provisions overlap in part, they are by no means congruent"); *see also* Scalia & Garner, *Reading Law* at 176 (describing the surplusage canon as "courts avoid a reading that renders some words *altogether redundant*") (emphasis added).

9

Fourth, while the canon against superfluity "applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times," *Bilski v. Kappos*, 561 U.S. 593, 608 (2010), it is "pretty weak when applied to acts of Congress enacted at widely separated times," *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir. 1999) (internal quotation marks omitted); *see also Freytag v. C.I.R.*, 501 U.S. 868, 877 (1991) (expressing a "deep reluctance to interpret a statutory provision so as to render superfluous other provisions *in the same enactment*") (emphasis added) (internal quotation marks omitted); *United States v. Smith*, 100 F.4th 1244, 1250 n.6 (10th Cir. 2024) (explaining "we are not persuaded that the canon against superfluity stretches to after-the-fact legislation; this is to say, we can best understand the breadth of legislation by its text, not by presuming the non-redundancy of later legislation").  The Laken Riley Act was passed this year—decades after the other relevant provisions—so the canon against superfluity does not apply strongly here.

Mejia Olalde also cites the longstanding practice of the Board of Immigration Appeals. True, the Board acknowledged "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N at 225 n.6.  And "the longstanding practice of the government . . . can inform a court's determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (cleaned up).  "But a 'long-established practice' does not justify a rule that denied statutory text its fairest reading." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015).  And the "weight" of an administrative agency's judgment depends "upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  Mejia Olalde nowhere cites a thorough,

10

reasoned analysis from administrators explaining why aliens covered by § 1225(b)(2) are eligible to receive bond hearings. Indeed, a 1997 interim rule from the Department of Justice merely asserts: "Despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). The interim rulemaking offered no interpretation of the statute to justify that nontextual policy, so the Court accords it little to no weight. The plain meaning prevails.

## Conclusion

Because § 1225(b)(2), not § 1226(a), governs Mejia Olalde's detention, the Court denies Mejia Olalde's request to order an individualized bond hearing. And because Mejia Olalde is lawfully detained under § 1225(b)(2) for proceedings, *Jennings*, 583 U.S. at 302, the Court denies Mejia Olalde's request for release.

**IT IS HEREBY ORDERED** Mejia Olalde's petition for a writ of habeas corpus, ECF 1, is **DENIED**.

Dated this 10th day of November, 2025

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE